■ ISLAND DOCK LUMBER, INC., et al., Doing Business as READY MIXED CONCRETE CO., Respondents, v. ROGERS & HAGGERTY, INC., Appellant, and NATIONAL SURETY CORPORATION, Respondent-Appellant, et al., Defendant.— Appeal from a judgment of the Supreme Court in favor of plaintiffs and defendant National Surety Corporation, entered August 12, 1970 in Ulster County, upon a decision of the court at Trial Term without a jury. These consolidated actions were commenced to foreclose a materialman's lien for the balance of $9,930.75, with interest, for concrete ready mix plaintiffs delivered to a subcontractor (Gem Stone) at the construction site at the State University Teachers College at New Paltz, New York. Defendant, Rogers & Haggerty, Inc. (Haggerty) was the general contractor and it assumed and guaranteed the obligations of the subcontractor. Defendant National Surety Corporation is the surety on the performance bond. Plaintiffs seek to recover for materials furnished during the period May 5, 1959 to August 13, 1959. Defendant Haggerty, among other things, contends that the concrete mix furnished between

670

July 17, 1959 and August 13, 1959 did not meet specification strength. The trial court found that all concrete delivered to the construction site was in accordance with design mix specifications. It further found that the reason any poured concrete between July 17, 1959 and August 10, 1959 was not in accordance with specification strength was due to three agents; namely, overmixing, excess water or elevated temperature; and that the excess water and overmixing were caused solely by the acts of defendant Haggerty, subcontractor Gem Stone or the architect. The issue before us, therefore, narrows to whether the plaintiffs have established by a fair preponderance of evidence that the concrete mix, when delivered, complied with the required specifications. From an examination of the record it develops that from the time the materials were at the batching plant until the ready mix became a part of the construction as concrete, several tests were performed. The most helpful, however, in assisting us to resolve the present controversy is the cylinder test. It is uncontroverted that from the results of this type test, of which there were several during the period in question, the required strength was not met. Each demonstrated that the specimen was considerably below the required strength of 3,000 p.s.i. All of the cylinder tests were made at the beginning of the pouring of a load and prior to any further order to add more water. Such test collected the material while it was still within the control of the plaintiffs and unaltered by the acts of others. The record reveals that water was often added and mixing continued subsequent to the removal of the sample for the test, both being at the direction of others than plaintiffs. The trial court and plaintiffs relied strongly on the testimony of Dr. Brown, the consulting engineer. He did not concern himself, however, with the cylinder test in arriving at his conclusions. He used an examination of various cores, which were drilled from the building months later. While he based his opinion of inadequate strength on a combination of overmixing, excess water and elevated temperature, he gave no opinion as to whether it occurred before or after delivery. On this record we conclude that the plaintiffs failed to meet the burden of establishing by a fair preponderance of evidence that the ready mix met the prescribed strength test when delivered. Judgment reversed, on the law and the facts, with one bill of costs, and matter remitted to the trial court for a computation of damages in accordance with this memorandum. Reynolds, J. P., Staley, Jr., Cooke, Sweeney and Simons, JJ., concur.